19 N.J. Super. 136 (1952)
88 A.2d 26
ELIZABETH CARROLL, OTHERWISE ELIZABETH DeMARTINI, PLAINTIFF,
v.
PAUL DeMARTINI, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 17, 1952.
*138 Mr. John B. Simeone, attorney for plaintiff.
Mr. Nathan Baker (Mr. Bernard Chazen, appearing), attorney for defendant.
PINDAR, A.M.
The complaint filed July 30, 1951, demands in a first count a judgment annulling plaintiff's purported civil marriage to defendant on July 16, 1945, at Hoboken, New Jersey. The gravamen of the action is that on the marriage date she was 17 years and five months old and did not in any wise confirm the marital relationship after arriving at her eighteenth birthday. R.S. 2:50-1(e), now N.J.S. 2A:34-1(e). She was born February 17, 1928. Plaintiff also demands support for and custody of a female child born of the marriage on June 11, 1946, and for counsel fee and costs.
The second count demands the return or value of a certain engagement ring in defendant's possession. However, that claim has been settled and discontinued.
In his answer defendant denies the cause for nullity and sets forth separate defenses in substance as: (1) the parties *139 were lawfully married (by a religious ceremony) according to the laws of New York State on August 19, 1945. (Plaintiff was then 17 years and six months old); (2) ratification, and (3) plaintiff's laches for unreasonably delaying enforcement of her existing right (about five and a half years after arriving at the statutory age of 18). Also, by way of counterclaim, defendant demands a judgment of dissolution on the ground of simple desertion as of on or about November 22, 1945, R.S. 2:50-2(b), now N.J.S. 2A:34-2(b), and for reasonable visitation with said child.
By her answer to the counterclaim plaintiff denies the charged desertion and avers that she absented herself to disaffirm the marriage.
Jurisdiction for the complaint at the time action was instituted rested on defendant's bona fide residence in New Jersey at the commencement of the suit, R.S. 2:50-9(a), and for the counterclaim defendant's bona fide residence in this State more than two years next preceding the commencement of the suit. R.S. 2:50-10(a).
It will be noticed that the foregoing resume of the contra-issues presents some perplexity as to the several causes. Thus, detailed reference to the proofs as well as the respective contentions of counsel is necessary.
As appears from the record, the marriage on July 16, 1945 (New Jersey) was not consummated, and not until after the marriage on August 19, 1945 (New York) did consummation occur. Thereafter there was continual cohabitation until plaintiff separated herself from defendant on November 22, 1945, when she was two months and 25 days under the age of 18 years. There was no subsequent resumption. Plaintiff returned to her parents' home in New York City where she still resides with the child. Defendant has continued his residence in New Jersey. It further appears that on August 5, 1946 (7 months after reaching 18 years), plaintiff filed a complaint for support in the Juvenile and Domestic Relations Court of the County of Hudson (Exhibit P-1). Defendant asserts that application, its prosecution, and the *140 award under it, being for plaintiff and child, was an act in confirmation of the marriage. But, plaintiff contends the allowance was for the child. In any event, although support was granted, there was no formal order. Also, it further appears that plaintiff has been since the date of separation disposed against reconciliation and resumption. That situation, defendant submits, is corroborated by the circumstance of plaintiff's complaint for voidance of any marital relationship. It should be stated that plaintiff's non-age on the dates of both marriages, the occurring consummation, her separation, and the lack of marital relations after her eighteenth birthday, including complete absence of resumed cohabitation thereafter upon her disposition not to do so, are all items of undisputed factual proof.
The statutory provisions of both states for nullity on the issue of non-age is conceded. The pertinent respective statutes are as follows:
N.J.S. 2A:34-1(e). Causes for judgments of nullity.
"e. The demand for such a judgment is by the wife and she was under the age of 18 years at the time of the marriage, unless such marriage be confirmed by her after arriving at such age.

* * * * * * * *
No judgment of nullity shall be made where a child of the parties has been born, either before or after the marriage, or is likely to be born, unless the court upon an examination of all the facts of the case shall be of the opinion that such judgment will not be against the best interests of the child."
Domestic Relations Law of New York. Laws of 1909, chapter 19, as amended.
"Sec. 7. Voidable marriages. A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: 1. Is under the age of legal consent, which is eighteen years, provided that such nonage shall not of itself constitute an absolute right to the annulment of such marriage, but such annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage."
However, while under settled law the question of validity of marriage will be determined by the lex loci contractus and *141 its voidance by the lex domicilli, the established rules need not be considered sub judice because of the adjudication herein, later to be stated.
I come now to the variant legal premise of counsel to support the judgment demanded by each party. Plaintiff urges: (a) the issues are solvable under the statutory grant to an under-age party to have an annulment of the New Jersey marriage on the credible proof sub judice; (b) the New York marriage is mere surplusage  being only for the purpose of adding religious sanction to a lawful existing marital status, and therefore without need for adjudication; and (c) if voidance of the foreign state marriage is necessary, then the similarity of provisional grounds of both states sustains the right to affirmative relief of nullity of both marriages. On the other hand, defendant submits: (a) as a voidance of the New Jersey marriage, upon entry of judgment under the law of this State, will operate ab initio the New York marriage would become (on the so effective date) a binding and lawful marital contract until annulled under the law of New York, and then void only as of the date of adjudication; (b) nullification of either or both marriages should be denied as being against the welfare of the child born to this union; (c) the extended delay (five and a half years) before seeking the statutory right to annul, affordable to plaintiff, justifies denial thereof on the ground of laches; and (d) upon credible corroborative proof of plaintiff's desertion defendant is entitled to have judgment on his counterclaim.
It is significant to observe that upon the event of either a judgment of nullity or dissolution it is conceded the question of support would be the same. In neither case does plaintiff claim the right to have alimony. But, in either event, the duty of the defendant father to support the child of the marriage will be continuous with necessity. R.S. 9:2-3, as amended, L. 1948, c. 321, p. 1295, sec. 3; also, after judgment of divorce, N.J.S. 2A:34-23.
*142 If the cause of plaintiff were uninvolved by the hereinafter related circumstances, no reason would exist to deny judgment of nullity. The marriage in this State is voidable under plaintiff's right by statute unless that grant is lost because of her adverse conduct. Nor does the prevailing rule of voidance ab initio warrant denial. In that instance the effect thereof would not create a legally qualified status of the parties to enter into a binding marital contract on the date of the New York marriage. Assuming, but not deciding, that the purpose of the foreign marriage was only to give religious character to their union, they did not then possess the prerequisites to found a lawful contract. In fact their minds had met and the necessary consideration was expended by virtue of the valid ceremony heretofore which continued a legal marital relationship until voided or dissolved. It is needless to add that a valid existing marriage is in nowise affected by pluralism.
Under this record the statutory right of plaintiff to disaffirm continued to February 17, 1946, whereupon the desired relief would be barred in the event of confirmance thereafter. In this respect there is no direct proof to sustain a confirmatory result. As no sexual relations or cohabitation occurred subsequent to the eighteenth birthday the mere fact that plaintiff sought and received the support as appears herein after reaching statutory age did not establish confirmation.
But does not plaintiff's failure to undertake action to enforce her right of nullity until July 30, 1951 (a delay of five and a half years), impugn her cause? I believe so. Throughout that extended intervening period her inaction, for every social and lawful purpose, continued a marital institution. The right of voidance inured only to her and the retained cause had forceful control over both defendant and the child. He could not overcome the singularity of plaintiff's right to seek a termination of his marriage, and he was beguiled from availing himself of provisional statutory relief of dissolution meanwhile. The child likewise remained *143 classified as the issue of a valid marriage but continuously exposed to a characteristic change of that status at the will of plaintiff. Certainly this evident irresoluteness toward defendant and child ought not exist suspended beyond such time as would be reasonable for plaintiff to exercise her permissive right. Surely regard for her privilege to disaffirm should not be unbounded.
In Scularekes v. Gullett, 106 N.J. Eq. 369 (Ch. 1930) Vice-Chancellor Fielder held a delay of two years after arriving at the age of consent did not on the facts therein indicate confirmation a bar to the action. But in that case there was no child and the under-age wife was deserted. Moreover, it is significant to note that at page 372, the court said:
"* * * Perhaps, under some circumstances, such a delay might be held to indicate confirmation of the marriage, but in this case such inference cannot be drawn. * * *"
It will not be gainsaid that if a period of two years could under other factual evidence adequately infer confirmation, the prevailing facts herein of issue born and the voluntary continued separation of the non-age party from her husband for a term of five and one-half years before filing suit are sufficient distinguishable reasons to find substantial confirmation. Besides that, the long failure of plaintiff to act clearly evidences a guilt of laches and good cause to conclude her right of enforcement now would be inequitable. Whether her inaction be termed negligence or bad faith it has prejudiced the welfare of the child, and with full knowledge misguided, if not deceived, defendant as to his matrimonial existence.
As previously said, the child was conceived after the mutual desired sanctification of the marital relationship. Thereby the interest of the child as to its parentage resulting from a valid marriage was fully established, which has continued until now. Such profound classification will be considered foremost on the matter of welfare and should not be lightly disturbed. Although a child born of every purported *144 marriage, except one that is non-ceremonial and void by reason of a prior existing marriage which was lawful and not dissolved or annulled, is by statute declared legitimate (R.S. 2:50-33, now N.J.S. 2A:34-20), that perfectible classification of legitimacy is not without probable social reflection. The innocence of every child warrants strict protection against any possible degree of stigmatization of birth. Whereas, a child of a fractured marital union, unfortunately resulting in divorce, is not confronted with or exposed to impugnation of its birthright. It is axiomatic that equity will do what in good conscience ought to be done. Under that maxim plaintiff's lack of diligence is unconscionable and as such reflectional toward the best welfare of her child.
By the foregoing it is not intended, nor do I hold, the right of nullity grounded on non-age will be denied when issue is or is likely to be born, whether the marriage be by civil or ritualistic religious ceremony, in a proper case. Rather, as the law and the peculiar circumstances of each case must be the determinative means for the court to grant or deny the particular claim, the dereliction of the plaintiff herein cannot be disregarded. Under either the statutory authority or the inherent power of the court to exercise judicial discretion the proofs sub judice sufficiently show that voidance of this marital relationship would be against the best interest of the child. However, consistent with denial of nullity, any discretionary action under either statute would be moot. Nevertheless, discretion is exercised in this case within the rule of general jurisdiction superinduced by the bar of estoppel, as to child welfare.
Defendant's counterclaim for desertion must be supported by corroborative proof of the willful, continued and obstinate elements of the statute. The record and circumstances appearing herein present plenary proof of plaintiff's willfulness and obstinacy against functioning the marital relationship. She initially withdrew from the matrimonial home without such justification which would entitle her to a judgment of divorce from bed and board. Likewise, whatever *145 the conduct of counterclaimant might have been under his required duty to make sincere and conscientious efforts toward resumption of the marriage, it appears that a greater manner of persuasion would not have accomplished reunion. While that situation is not clearly supported by oral testimony, the additional indubitable circumstance of plaintiff's election to disaffirm shows credible corroboration of her adamancy.
Lastly, there remains for determination the necessary third element of continuity. Defendant's counterclaim sets forth a desertion as having commenced "on or about November 22, 1945, and for more than two years last past," and was filed September 14, 1951, or five years, nine months and 13 days after the separation. Of course, no commencement date of desertion could be effectual before February 17, 1946, when plaintiff arrived at her eighteenth birthday, plus what would be determinable as a reasonable time thereafter to allow her to prosecute the voidable cause of nullity. Here again, plaintiff's conduct must be scrutinized. As one case is unlike another the prevailing circumstances must guide the court. Also, the commencing date concerns the probable accrual of the statutory term for a two-year desertion preceding the filing of the counterclaim. Taking the norm of two years as determined in Scularekes v. Gullett, supra, and for that purpose disregarding the distinguishing factual situation hereinbefore related, plaintiff's right to seek annulment extended to February 17, 1948. That assumption would leave defendant a period of three years and seven months to base an accrued desertion. In fact, if plaintiff's time to take action were extended an additional year or until February 17, 1949, there would still remain sufficient expiration of time prior to the filing date for defendant to litigate a vested accrual. From what date and for what term therefore did the cause set forth in the counterclaim sub judice exist? Surely, the suspension of defendant's remedial statutory right was not unlimitedly abated by or subjugated to the whim of plaintiff. Otherwise defendant's marriage would *146 be indissoluble, notwithstanding how basely plaintiff's desertion was. Equitable efficacy will give rise to a cause of desertion under our divorce statute to one party after an unwarranted delay by the other party of three years before institution of suit to nullify a voidable marriage.
For a cause of desertion any term of two years (before commencement of suit) is sufficient to treat the marital relation at an end at the insistence of the party deserted, and after the statutory two-year period has elapsed the desertion becomes permanently established and its character continues until the filing of suit. Furthermore, upon a persistent desertion for the full term of two years the offended spouse acquires a vested right to a divorce and he or she can never be deprived of it, except by his or her own act. See Tremarco v. Tremarco, 117 N.J. Eq. 50, at p. 53 (E. & A. 1934).
Finally, this court will not actively relieve one who has slept on a right and acquiesced for a great length of time. When neglect or omission in conjunction with the lapse of time, and other circumstances, causes prejudice to an adverse party such indifference will amount to laches and operate as a bar in a court of equity.
In view of the foregoing and after full consideration of the pleadings, proofs, arguments of counsel, and the law, including a finding of fact, I have concluded to advise that the complaint be dismissed and that a judgment nisi be entered on the counterclaim. Also that custody of the child of the marriage be awarded to plaintiff with the right of reasonable visitation to defendant-counterclaimant.
Counsel should present a form of judgment in conformity herewith at which time the terms of custody and visitation, and the questions of support for the child, counsel fee, and costs will be considered. See Rule 3:54-1, as amended.